J. B. FINLEY *v.* ACME KITCHEN FURNITURE COMPANY

AND

JOHN FINLEY, by next friend, *v.* ACME KITCHEN FUR-
NITURE COMPANY.*

(*Knoxville.*   September Term, 1907.)

1.  **APPEAL.** Reprimand of attorney by trial judge is not re-
    viewable.

    The reprimand of an attorney by a trial judge, even if it be un-
    warranted, cannot be undone or reviewed by the supreme
    court. (*Post, p.* 702.)

2.  **SAME.** From judgment for costs of investigating professional
    conduct of an attorney.

    Right of appeal from a judgment taxing an attorney with the
    costs of an investigation of his professional conduct in a pend-
    ing case exists. (*Post, pp.* 702, 703.)

3.  **ATTORNEYS.** Taxed with cost of investigation of miscon-
    duct towards associate

    Part of the costs of an investigation of the professional conduct of
    the attorneys in a pending case is properly awarded against
    the one who unjustly prejudiced their common client against
    an associate attorney by stating wrongly that the declarations

---

*As to question whether one employing child under statutory
age may rely on contributory negligence, or assumption of risk,
to defeat liability for personal injury sustained by the latter, see
note to Lenahan v. Pittston Coal Min. Co. (Pa.), 12 L. R. A.
(N. S.), 461.

Employment of child in violation of statute as negligence which
will sustain an action by the child for personal injuries, see note
to Rolin v. R. J. Reynolds Tobacco Co. (N. C.), 7 L. R. A. (N.
S.), 335.

Finley v. Furniture Co.

filed by him were fatally defective, whereas they were sufficient and valid with the intent to procure the associate attorney's discharge from the cases, though the latter had treated the other unfairly by omitting his name from the declarations and filing same without consultation with him and otherwise.

4. **EMPLOYER AND EMPLOYEE.** Sufficient declaration for injury to infant under fourteen employed in a factory.

A declaration upon the facts of the case, without more, showing that an infant under the age of fourteen years was injured while working under employment, in a furniture factory, is sufficient to sustain the action against the employer for the injury. (*Post, p.* 705.)

Case cited and approved: Iron & Wire Co. v. Green, 108 Tenn., 161.

5. **PLEADING AND PRACTICE.** Correction of mistake in referring to a statute by the wrong chapter is no cause for continuance.

A mistake in a declaration in an action for personal injuries to a child under fourteen years of age, while employed in a factory, by referring to the statute prohibiting such employment by the wrong chapter number, is so unimportant and immaterial that the mere suggestion to the court would have been sufficient for leave to make the correction, and, even if made in the midst of a trial, no judge would have granted a continuance of the case on that account. (*Post, pp.* 705, 706.)

6. **ATTORNEYS.** Evidence showing misconduct towards associate warranting taxation of half of the costs of investigation against him.

The evidence in an investigation of the professional conduct of an attorney in a pending suit is stated, examined, and held sufficient to show misconduct in prejudicing the mind of their common client against another attorney jointly employed with him, warranting the taxation of half of the costs of such investigation against him.

FROM HAMILTON.

Appeal in error by J. T. Cameron, an attorney connected with the cases, from a judgment for certain costs, rendered by the Circuit Court of Hamilton County.—M. M. ALLISON, Judge.

BURKETT, MILLER & SWAFFORD and HEAD & FORD, for plaintiffs.

WILLIAMS & LANCASTER, for defendant.

ROBERT T. CAMERON appeared and argued for himself.

MR. CHIEF JUSTICE BEARD delivered the opinion of the Court.

These causes are before us on an appeal involving an issue collateral in its nature. They were brought by a father in his own interest for the loss of services of an infant son, the result of a serious injury received by the latter from the alleged negligence of the furniture company, and by the son, through a next friend, to recover damages in his own right for the same in-

jury.  The actions were brought for the several plain-
tiffs by J. O. Benson, a young lawyer of the Chatta-
nooga bar.   Subsequently, by an arrangement between
J. B. Finley and Benson, made in view of an original
agreement, R. T. Cameron, a member of the same bar,
was associated with Benson as an attorney of record
in these causes.   Before this was done there arose fric-
tion between the client, J. B. Finley, and Benson, and
between the latter and Cameron.   This friction resulted
in bad blood between these parties.   After declarations
had been prepared and filed by Benson in the several
causes, this friction evidently became more and more
aggravated, and in the end W. B. Miller, a member of
the same bar, was called into the cases by J. B. Finley.
A determination was then reached, it is apparent from
the record, to get rid of Benson by a dismissal of these
causes and by the institution of new suits for the same
causes of action against the furniture company.   In
pursuance of this plan, orders of dismissal were pre-
pared by Mr. Miller and filed with the clerk of the cir-
cuit court of Hamilton county, of which notice was
given by him to Benson, who, when the matter was pre-
sented to the circuit judge in open court, opposed the
entry of these orders.   At that time it was disclosed
to the circuit judge that there had been possibly a gross
violation of professional propriety both in the institu-
tion of the original suits and also in the methods
adopted to get rid of them, as well as the services of
Benson, the attorney who brought them.   Upon this

discovery a rule was made upon the attorneys apparently implicated, which being answered, in due time the trial judge appointed a committee, composed of leading members of the local bar, and directed them to make a thorough investigation of all matters pertaining thereto, and, if satisfied that there had been wrong done on the part of any one or all of these attorneys, to report back to him, with the evidence taken and with charges preferred. At the end of an investigation, which the record shows was both extensive and thorough, this committee reported, and at the same time preferred charges against all these attorneys whose names have been given. The circuit judge, however, dismissed the proceeding so far as Miller was concerned, but upon the evidence and report reprimanded in open court both Cameron and Benson, and charged each with half of the cost of the proceeding. Benson submitted to the judgment of the court; but Cameron has appealed, and insists in this court that there was nothing in the evidence either to warrant his disbarment as a lawyer or his reprimand by the trial judge. So far as the reprimand is concerned, that is passed, and, even if it were unwarranted, it could not be undone or reviewed by this court. But the right of appeal from the judgment, in so far as it taxed him with a part of the costs of the proceeding, does exist; and, if the plaintiff in error is right in his insistence, then the action of the trial judge as to this may be set aside, and thus indirectly

he could be relieved.   Does this record warrant the insistence made in Cameron's behalf?

The testimony shows that the son of John B. Finley, a child under fourteen years of age, while in the service of this furniture company, was so seriously injured that an amputation of one of his legs was necessary. Either through the newspapers of the city of Chattanooga, or else through a friend who knew of this accident and also had some acquaintance with Finley, Benson's attention was called to this accident and to the fact that a lawsuit would probably grow out of it. Through one or more friends Benson solicited employment in the suit, if one should be determined upon, and immediately thereafter visited the home of Finley and personally sought such employment.   After one or two visits the bringing of these two suits in question was agreed upon, and according to Finley it was at the same time stipulated that Cameron was to be associated with Benson in the bringing and the conduct of the cases. The two summonses, however, were sued out by Benson as the sole attorney, and as such, after proper service, declarations were filed by him, omitting therefrom the name of Cameron.   At the time of the accident, as well as at the institution of the suits, Cameron was absent from Chattanooga.   On his return he ascertained from Finley that his services were required, and that it had been stipulated in the beginning that Benson and he should be jointly associated in the litigation.   Soon afterwards a meeting occurred between the father (J.

B. Finley), Benson, and Cameron, where a somewhat angry colloquy occurred, but which resulted in the making of a written agreement by the terms of which Cameron and Benson were jointly to conduct these causes. The charges against Mr. Cameron are found in the following paragraphs of the judgment of the court, predicated upon the report of the committee of investigation and the testimony submitted to the court by this committee. They are in the following words:

"First. That attorney R. T. Cameron, after his employment in the two cases against the Acme Kitchen Furniture Company had been fully conceded in writing by Attorney John O. Benson, proceeded in violation of all professional ethics to endeavor to prejudice their common client, J. B. Finley, against the said J. O. Benson, by telling the said Finley that the declaration drawn by said Benson was defective, and that this was done with the evident intention on the part of said Cameron to so prejudice the said Finley against the said J. O. Benson as to result in the discharge of Benson from the cases.

"Second. That Attorney R. T. Cameron, actuated by motives of personal resentment against John O. Benson, whom he charged of having stolen business from him, connived at an arrangement whereby the suits commenced by John O. Benson were to be dismissed and new suits instituted for the same causes of action, in which their common client was to be represented by himself and Attorney W. B. Miller, but in which suits

the said John O. Benson was not to be employed as an attorney."

We agree with the circuit judge in his judgment of condemnation of the conduct embraced in these charges, if it be true that the evidence submitted establishes their truth. The evident impression upon Finley's mind was that these declarations already filed were radically wrong, and that an effort to amend them would result most likely in a continuance of the cases and a postponement in ultimate recoveries which were sought in them. These declarations are sent up as a part of the record, and have been examined by the court, and the impression thus conveyed is not at all warranted. Each declaration contains two counts. In each of the counts recovery is sought, not only on the ground of negligence on the part of the defendant in the operation of the elevator on which the injury occurred, but especially by reason of the fact that the injured party was an infant under fourteen years of age. The first count in both declarations would have supported the action, without more, had it proved to be a fact that he was in the service of this corporation, hurt in that service, and under fourteen years of age. This count declared on the facts of the case, and, without more, was sufficient to sustain the action. *Iron & Wire Co.* v. *Green*, 108 Tenn., 161, 65 S. W., 399. The second count in each declaration declared upon the statute which makes it a misdemeanor to employ children in a manufactory, such as that of the defendant, when four-

119 Tenn.—45.

teen years of age, but by inadvertence referred to the statute in question as chapter 159 of the Acts of the general assembly of Tennessee of 1901, while in fact it was chapter 34 of these Acts. As has been said, a recovery could have been rested upon the first count of each of these declarations. No amendment was required of that count. As to the second count, the slip of the pen, just referred to, was so unimportant and immaterial that the mere suggestion to the court would have been sufficient for leave to make the correction, and, even if made in the midst of a trial, no judge would have on that account granted a continuance of the case. We are at a loss to account for the criticism made on these declarations, unless it was made for the purpose of increasing the animosity upon the part of the common client to Benson, with a view of getting rid of him by the dismissal of the cases which he had brought. The record shows that Mr. Cameron originally suggested the defect in the declaration, and that the suggestion had the effect of both alarming and exasperating Finley is certainly true. Finley testifies that this suggestion came from Cameron. It was stated by Finley to a number of parties that the idea of the defect in the declaration was communicated to him by Cameron. While in the letter denying that he either alone, or in association with another, instigated the dismissal of these suits in order to get rid of Benson and leave himself and Miller jointly to conduct the new suits, yet we think it apparent, from the admissions made by Cam-

eron in his testimony, that in spirit and in substance this was done by him. Speaking of the conversation in which he told Finley that the declaration would have to be amended, he said:

"It came up in this way: He was discussing his dissatisfaction with Benson about the way he had done, what he had told him about the insurance money, and what Benson had told him in reference to having evidence as to how the accident occurred, and, further, about the way he had acted in the beginning of the suit in not putting me in the suit at the start like the agreement was; and then in discussing these things he said that he wanted to get rid of Benson. And while we were discussing this I said: 'Yes; the declaration will have to be amended.' I told him that he had filed the declaration without submitting it to me, and that I had since learned that the declaration was wrong; that the wrong chapter was used. Finley asked me what he could do with the lawsuit—how he could get rid of Benson. I told him I was not a man to advise him, because I was in the lawsuit with Benson; that it was his lawsuit, and that he could do as he pleased with it; and that he would have to get his advice from another source. I did not recommend to him the employment of Miller, did not recommend the employment of anybody, nor did I tell him not to dismiss the suits, because I was satisfied for him to dismiss the suits. I did not feel like I owed Benson anything, the way he had acted in the suit. I did not feel like I owed him

any courtesy to use my influence with Finley to retain him in the suit, and I told Finley that he could do as he pleased and get his advice from some one else, and I recommended no one. Nor did I try to keep him from dismissing Benson. . . ."

Again he says: "I did not particularly care whether Benson was turned out or not. Finley had a right, the way I looked at it, to dismiss him if he wanted to. He had a right to dismiss Benson, if Benson gave him cause. He had a right to control his own business, and I did not feel friendly enough disposed to Benson, knowing the facts as I did know them from the inception down to that time, to use my influence with Finley to try to keep Benson in the suit."

In a number of places in his testimony this is repeated in one form or another—that he told Finley that "if he wanted to dismiss Benson he could do so, and that if he wanted to dismiss" him (Cameron) he could; but he admits that he had no idea that the dismissal of Benson would affect his employment in the case.

The motion to dismiss these suits was made by Mr. Miller after his employment. While the motions were pending Mr. Pope Shepherd was present at a conversation which occurred between Mr. Anderson, of the Chattanooga bar, and Mr. Cameron, when, according to him, this occurred: "Anderson asked Cameron if Miller was going to get him and Benson out of that lawsuit, and Cameron replied to let Miller go ahead with his motion, that it was all right with him [Cameron], that he had

an understanding with Miller, and would be in on the Miller suit. He further said that Benson had done him a dirty trick in getting the lawsuit."

On the whole record we are satisfied that the circuit judge was right in his finding, that after being associated with Mr. Benson, exasperated with him on account of what occurred at the inception of these cases, and finding their common client in bad humor with Benson, he increased the ugly temper of his client toward Benson, and alarmed with the suggestion that there was a defect in his declaration. We are unable to resist the impression that the purpose of this suggestion was to accomplish the very result that came about; that is, the dismissal of the suits brought by Benson and Benson himself. The suggestion of a defect to an ignorant man, as Finley was, anticipating, as he evidently did, substantial fruits from this litigation for himself and his son, and anxious to gather in these fruits at an early day as possible, could not have otherwise than the effect of greatly alarming Finley and increasing his dissatisfaction with Benson. Conceding it to be, as claimed by Cameron, that he had been badly treated by his associate, yet, after having accepted a joint employment with him, it was a violation of professional propriety so unwarrantably to stimulate their common client against this associate to and for his discharge.

We think that there is abundant evidence to support the judgment of the circuit judge in taxing Cameron with one-half the costs; and his judgment is affirmed.